(No. 21516.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES JENKINS, Plaintiff in Error.

*Opinion filed June 22, 1933—Rehearing denied October 4, 1933.*

HERRICK, J., took no part.

EDWIN F. MEISTER, for plaintiff in error

OSCAR E. CARLSTROM, Attorney General, ROBERT F. COTTON, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Charles Jenkins was indicted in the circuit court of Douglas county for receiving stolen property, knowing it to have been so obtained. A jury found him guilty and he was sentenced to the Southern Illinois penitentiary. He prosecutes this writ of error.

The plaintiff in error is forty-eight years of age, and resides in the village of Galton, in Douglas county. In December, 1930, Fred Beckman owned a farm situated about three miles northeast of the village of Arthur in the same county and Arthur Ashwell was his tenant. Late in that month Beckman discovered that boards had been removed from a corn-crib on his farm and that a considerable quantity of corn had been taken. It appeared that Clyde Albin had told the plaintiff in error that he wanted the latter's trailer to haul corn. The plaintiff in error took the trailer to the home of Albin's father. On a night between Christmas and New Year's day, Albin, Alva Cook and Jesse Morrow drove in a Ford truck, owned by Cook's father, with the trailer attached, to the crib on Beckman's farm and took a quantity of corn from the crib. The corn was loaded in the truck and the trailer, and was taken to the home of Albin's father in Arcola where all the corn,

154

loose and in sacks, was placed in the trailer. Albin testi-
fied that early the following morning the plaintiff in error
arrived in an automobile; that they, the witness and the
plaintiff in error, attached the trailer to the automobile and
drove about one hundred thirty miles to the home of W. J.
Moore south of Wayne City, in Wayne county, where they
left the corn; that, on the next day, the corn was unloaded
and they returned to Arcola, and that the plaintiff in error
paid Albin nine dollars for the corn. Both Albin and Cook
testified that they had previously sold the plaintiff in error
corn, barbed wire, harness and other chattels which they
had stolen.

Two witnesses, residents of Wayne county, testified that
during the last week of 1930, the plaintiff in error appeared
in their vicinity driving an automobile, to which a trailer
loaded with yellow corn was attached, and that he attempted
to sell the corn to one of them. Moore, at whose home the
corn was left, testified that he bought from the plaintiff in
error twenty-six and one-half bushels at eighty cents per
bushel and that the latter told him he had raised the corn.

The plaintiff in error testified that his father lived in
Wayne county; that in December, 1930, corn was scarce
in that county and that on the twenty-eighth day of the
month, accompanied by Clyde Albin, he left Arcola in an
automobile to which a trailer loaded with corn was attached;
that he owned the corn and had taken it from a crib at
Galton and that he sold the corn at eighty cents per bushel
to W. J. Moore, who resided south of Wayne City. He
admitted that he had offered to sell the corn to another
resident of Wayne county before he reached Moore's house;
that he had heard Albin and Cook say that the corn had
been obtained from Beckman's farm and that Albin had
spoken to him about the sale of some barbed wire, but he
denied that he ever made a purchase from either except a
small quantity of corn from Cook and a set of harness
from Albin. According to the information of the witness,

Cook had exchanged a horse for the corn and Albin had obtained the harness at a sale. The plaintiff in error further testified that he bought barbed wire, not from Albin, but in the city of St. Louis; and Moore, who asserted that he sold cattle there at the time, corroborated the testimony of the plaintiff in error in that respect.

Other witnesses were called by the plaintiff in error. Frank Emmons, a foreman employed by a railroad company, testified that in 1930, he leased a portion of his employer's right of way to the plaintiff in error; that the latter raised approximately eight hundred bushels of white and yellow corn upon it and that the plantiff in error delivered some of the corn to the witness and placed the remainder in a crib. F. E. Rose, the manager of a co-operative grain elevator at Galton, testified that during the last week of 1930, the plaintiff in error had a quantity of corn stored in the elevator. William VanDoren, a merchant at Galton, testified that on December 29, 1930, he assisted the plaintiff in error in scooping twenty-five or thirty bushels of corn from the elevator to a trailer and that some of the corn was placed in sacks. The reputation of the plaintiff in error respecting his obedience to the law, nine witnesses declared, was good.

On rebuttal, the sheriff of Douglas county testified that in executing a search warrant he found a harness which the plaintiff in error said he had obtained from some horse traders along a public highway. Raymond Wimple, a farmer, identified the harness as his property and testified that it had been stolen from him.

The defendant in error made a motion in this court to expunge the bill of exceptions on the ground that it was not taken and signed during the term of the circuit court at which the cause was tried and the motions for a new trial and in arrest of judgment were made and denied. The indictment was returned, the trial occurred and the two motions to which reference has been made were overruled

at the October, 1931, term of the circuit court. On the day disposition was made of these motions, the plaintiff in error filed a petition to be admitted to probation. The court took this petition under advisement. Thereafter, on February 20, 1932, the October term was adjourned. The first day of the March, 1932, term began on the 14th day of the month; and on that day the prayer of the petition for probation was denied, judgment was entered on the verdict, sentence was pronounced and the plaintiff in error was allowed forty days within which to file his bill of exceptions. The period for filing this bill was later extended thirty days.

To support the motion to expunge the bill of exceptions, the defendant in error relies upon the cases of *Hake* v. *Strubel,* 121 Ill. 321, *People* v. *Strauch,* 247 id. 220, *People* v. *Ellsworth,* 261 id. 275, and *People* v. *May,* 276 id. 332. These cases were decided prior to or failed to take cognizance of section 81 of the Practice act as amended, (Cahill's Stat. 1931, p. 2182; Smith's Stat. 1931, p. 2205). That section provides, among other things, that "at any time during the term of the court at which judgment was entered or within such time thereafter as shall, during such term, be fixed by the court, any party desiring to prosecute a writ of error to or appeal from any such judgment, may submit to the court a stenographic report of the trial containing the evidence and the rulings of the court upon" the questions submitted and the judge shall examine the report and, if he finds it correct, shall so certify officially. The section further provides that the report shall thereupon be filed and that all matters and things contained in the report shall become as effectually a part of the record as if duly certified in a formal bill or bills of exceptions. The stenographic report or bill of exceptions may be submitted to the trial court at any time during the term "at which judgment was entered or within such time thereafter as shall, during such term, be fixed by the court."

The judgment in this case was entered at the March term and the bill of exceptions was signed and sealed within the time fixed at that term. The statute did not require the presentation of the bill of exceptions at the preceding October term and the motion to expunge must therefore be denied. *People* v. *Duyvejonck,* 337 Ill. 636.

The plaintiff in error contends that the allegation of the indictment respecting the ownership of the corn was not proved as alleged. It was charged in the indictment that the corn was the property of Fred Beckman and Arthur Ashwell. Beckman was the owner of the farm and Ashwell, his tenant, raised the corn. The former testified that when he saw the crib on December 30, 1930, boards had been removed from it and a quantity of his corn was missing. Ashwell was authorized to remove corn from the crib and his interest in the corn was conceded. Albin testified that he pleaded guilty to the theft of corn from Beckman and Ashwell between Christmas and New Year's day. Cook testified that corn taken from Beckman and Ashwell was delivered to the plaintiff in error and that he was told where it had been obtained. There was no objection to the foregoing testimony and it was not contradicted. Ownership of the property stolen must be proved as alleged, but proof in specific words is not necessary and such ownership may be proved by any testimony which establishes the fact. (*People* v. *Coffman,* 338 Ill. 367; *People* v. *Sturdyvin,* 306 id. 138.) It follows that the ownership of the corn was proved as alleged.

The stolen property was described in the indictment as fifty bushels of Indian corn of the value of twenty-five dollars, and it is argued that there was no proof that Indian corn was taken. The theft, sale and delivery of corn was shown by the evidence. In the United States the use of the word "corn" is restricted to Indian corn. (Webster's New Int. Dict.; Century Dict.; New Standard Dict.) Hence

there was proof that Indian corn was taken and the objection is without merit.

Certain remarks made by the trial judge, it is argued, were prejudicial to the plaintiff in error. To an answer by Albin that "I took some of the wire to Jenkins' barn and some of it to my father's barn and Jenkins would come and get it there," it was objected that the part of the answer relating to what Jenkins did was in the form of a conclusion. The judge observed, "Yes, unless he saw Jenkins get it himself. Did you see Jenkins get it out of your father's barn, Mr. Albin?" Albin answered, "Yes, sir." The judge expressed no opinion upon a controverted question of fact, but merely called for a direct answer based upon the knowledge of the witness. When W. J. Moore testified that he bought corn which had no concern with the present case, the judge remarked, "Never mind about that." A judge, even in the absence of an objection, is not obliged to permit a witness to volunteer, as a part of his answer, testimony which has no relevancy to the issues in the case. It does not appear that the plaintiff in error was prejudiced by any remark or statement made by the trial judge.

It is contended that the court erred in giving the instruction regarding the form of the verdict in case the jury should find the plaintiff in error guilty. There was, in the instruction, no assumption of the truth of any controverted fact or of guilt, as asserted by the plaintiff in error. On the contrary, it was specifically stated in the instruction that if the jury should find the defendant guilty of receiving stolen property, knowing it to be stolen, their verdict should be in the form submitted. The court did not err in giving the instruction.

The final contention is that the verdict rests upon the uncorroborated testimony of accomplices and that, in consequence, the plaintiff in error was not proved guilty beyond a reasonable doubt. The testimony of an accomplice

is competent, but it is subject to grave suspicion and should be acted upon with great caution. The jury should carefully consider such testimony in the light of all the other evidence in the case and the influence under which the testimony was given, in order to determine whether the purpose of the witness was to shield himself from punishment, to obtain some personal benefit or advantage or to gratify his malice. If, after all the facts and circumstances in evidence are considered, such testimony uncorroborated is of such a character as to prove guilt beyond a reasonable doubt, it will authorize a verdict of guilty. (*People* v. *Levy*, 351 Ill. 110; *People* v. *Bugg*, 345 id. 210; *People* v. *Lawson*, 345 id. 428; *People* v. *Gordon*, 344 id. 422; *People* v. *Rongetti*, 338 id. 56; *People* v. *Elmore*, 318 id. 276; *People* v. *McKinney*, 267 id. 454; *People* v. *Rosenberg*, 267 id. 202.) The verdict, however, does not rest upon the uncorroborated testimony of accomplices. It is not disputed that the corn was taken from the crib on Beckman's farm. Both Albin and Cook confessed that they stole the corn and loaded it into the trailer; that they sold the corn to the plaintiff in error, and that the latter knew the corn was stolen. They also stated the sum of money or the equivalent which he paid them for the corn. From Albin's testimony it also appears that the trailer into which the corn was loaded from Beckman's crib belonged to the plaintiff in error. It is admitted that the plaintiff in error and Albin started on the trip to Wayne county on the morning following the theft of the corn and that the former there sold corn from his trailer. Neither Albin nor Cook dealt in merchandise; and when all the facts and circumstances shown by the evidence are considered, the conclusion follows that the jury's verdict was justified.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. Justice Herrick took no part in this decision.