The STATE of Ohio, Appellee,

v.

WEBB, Appellant.

[Cite as *State v. Webb* (1991), 72 Ohio App.3d 749.]

Court of Appeals of Ohio,
Huron County.

No. H-89-53.

Decided March 1, 1991.

750

*Michael R. Fegen,* Prosecuting Attorney, and *Richard R. Woodruff,* for appellee.

*Richard B. Hauser,* for appellant.

*Per Curiam.*

This matter is an appeal from a judgment of the Huron County Court of Common Pleas.

The facts as established at trial are as follows. On September 13, 1988, John Potter and Brad Jones stole Damian Luchkowsky's gun collection, including an Uzi and a .45 Colt, from Luchkowsky's residence. Later, that same day, Potter and Jones took the guns to the home of appellant, Billy Brook Webb. Webb contacted Eli Carroll, who came to the Webb residence and purchased several of the stolen guns. Webb testified that Potter and Jones never told him or Carroll that the guns were stolen and denied purchasing any of the guns. In contrast, Potter testified that he told Webb and Carroll that the guns were stolen. Potter further testified that, in

addition to the guns purchased by Carroll, Webb purchased the .45 Colt; the Uzi was left in Webb's garage.

On September 28, 1988, Potter and Jones stole David Wilcox's gun collection, including a Winchester Model 52–D target rifle, a Smith & Wesson Model 19, and a Smith & Wesson Chief Special 38, from Wilcox's residence. Potter testified that, either later that day or the next day, he took the stolen guns to the Webb residence. Potter further testified that he assured Webb the guns were from another county and that Webb then purchased the Winchester Model 52–D target rifle, the Smith & Wesson Model 19 and the Smith & Wesson Chief Special 38. In contrast, Webb denied Potter and Jones ever came to his home a second time in order to sell him guns. Webb testified that he purchased a Winchester Model 52–D target rifle and the Smith & Wesson Model 19, unaware that such guns were stolen, from a person he met at a Cleveland gun show. Webb further testified he subsequently sold the Winchester Model 52–D target rifle and Smith & Wesson Model 19 to a third party.

On May 12, 1989, Webb was indicted by the Huron County Grand Jury on two counts of knowingly receiving, retaining and disposing of stolen firearms in violation of R.C. 2913.51(A) and 2913.71. On September 7, 1989, a jury verdict of guilty as to both counts was returned against Webb. On October 12, 1989, Webb was sentenced to six months of imprisonment and ordered to make restitution.

It is from such judgment that Webb brings the following four assignments of error:

"1. The court erred by permitting the prosecution witness to testify as to the theft of different weapons than were supplied to defense in a bill of particulars.

"2. The court erred by permitting officer Sigsworth to testify that an accomplice told the officer that the accomplice told Billy Webb that the guns were stolen.

"3. The court erred by not giving the O.J.I. complicity instruction.

"4. The court erred by not discerning [sic] the firearm specification at the close of the state's case."

As his first assignment of error, Webb argues that the serial numbers of the guns stolen from Wilcox listed in the bill of particulars differed from the serial numbers of the stolen guns testified to by Wilcox at trial. The bill of particulars listed a Smith & Wesson Model 19 with a serial number K5571842 and a Winchester Model 52–D target rifle with a serial number 16709BD as stolen from Wilcox and allegedly purchased by Webb. At trial, Wilcox

testified that the serial number of the stolen Smith & Wesson Model 19 was K557198 and that of the Winchester Model 52–D target rifle was 107098D. Because of this discrepancy, Webb argues that Wilcox should not have been allowed to testify as to the theft of these weapons.

■ In general, only specific information going to the essential elements of the crime charged must be revealed in a requested bill of particulars. *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 OBR 410, 411–412, 478 N.E.2d 781, 784. However, general notions of due process and a fair trial may demand that additional known information be disclosed in the bill of particulars "if the absence of specifics truly prejudices the accused's ability to fairly defend himself." *Id.* at 172, 17 OBR at 412, 478 N.E.2d at 784.

■ In the present case, the serial numbers of the stolen guns are clearly not essential elements of the charge of receiving stolen firearms. Further, upon this court's review of the record, we cannot find that Webb's ability to defend himself was compromised by the discrepancy involving the stolen guns' serial numbers. Accordingly, Webb's first assignment of error is found not well taken.

As his second assignment of error, Webb argues that the trial court erred in allowing the hearsay testimony of Deputy Paul Sigsworth. Sigsworth testified that Potter informed the deputy that Potter told Webb the guns were stolen.

■ In the present case, we find that the error, if any, in the admission of Deputy Sigsworth's testimony was harmless. Potter himself testified, without objection, that he told Webb the guns were stolen. Therefore, Deputy Sigsworth's testimony was merely cumulative and did not contribute to Webb's conviction. Accordingly, Webb's second assignment of error is found not well taken.

As his third assignment of error, Webb argues that the trial court erred in failing to give the jury a cautionary instruction on the weight to be given accomplice testimony. Specifically, Webb argues that both Potter and Jones, as the persons who stole and sold the guns to Webb, were accomplices to the crime of receiving stolen property, thus requiring a cautionary jury instruction as to their testimony.

■ It is well-settled law that accomplice testimony is inherently suspect, and, therefore, failure to give a cautionary jury instruction as to such testimony constitutes error. *State v. Ferguson* (1986), 30 Ohio App.3d 171, 174, 30 OBR 312, 315–316, 507 N.E.2d 388, 390–391. However, at issue in the present case is whether the persons who stole and sold the guns to Webb should be deemed accomplices.

■ Jurisdictions outside Ohio are split as to whether a thief holds accomplice status as to a defendant charged with receiving stolen property. Annotation (1957 and Supp.1987), 46 A.L.R.2d 812. The majority view holds that a thief is not an accomplice as to a defendant charged with receiving stolen property, and, therefore, cautionary jury instructions are not required. Annotation, *supra*, at 820; see, *e.g., Vaughn v. State* (1941), 147 Fla. 12, 2 So.2d 122, overruled on other grounds *Tidwell v. Circuit Court* (1942), 151 Fla. 333, 9 So.2d 630. However, the courts in a minority of jurisdictions have held that a thief is an accomplice of one charged with receiving stolen property and cautionary jury instructions are required. Annotation, *supra*, at 832; see, *e.g., People v. Jenkins* (1933), 353 Ill. 152, 187 N.E. 148. Those courts espousing the majority view rely on the fact that the crime of theft and the crime of receiving stolen property are separate and distinct offenses. Therefore, a thief and a person charged with subsequently receiving stolen property are not accomplices. *Vaughn, supra.*

This court is persuaded by the majority view and holds that a thief is not an accomplice of a defendant charged with receiving stolen property for purposes of requiring a cautionary jury instruction. Accordingly, Webb's third assignment of error is found not well taken.

As his fourth assignment of error, Webb argues that the state failed to prove the stolen property consisted of operable firearms. Therefore, Webb could only be convicted of a misdemeanor rather than a felony under the criminal laws of Ohio.

■ In general, the offense of receiving stolen property with a value of less than $300 is a misdemeanor of the first degree. R.C. 2913.51(B). However, if the property involved is a firearm as defined under R.C. 2923.11, the offense is a felony of the third degree. R.C. 2913.71(C). R.C. 2923.11 defines "firearm" as:

"Any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."

Further, given the totality of the circumstances, "the state must present evidence beyond a reasonable doubt that the firearm was operable, or could readily have been rendered operable, at the time of the offense." *State v. Murphy* (1990), 49 Ohio St.3d 206, 208–209, 551 N.E.2d 932, 935. Such evidence may consist of "testimony of lay witnesses who are in a position to observe the instrument and the circumstances surrounding the crime." *Id.* at 209, 551 N.E.2d at 935. For example, in *Murphy,* witnesses testified that the defendant brandished a gun and threatened to kill witnesses in committing a robbery.

In the present case, there was no evidence presented at trial as to the operability of the stolen guns sold to Webb. The Uzi and the .45 Colt (the guns listed as the received stolen property under Count 1) and the Smith & Wesson Chief Special 38 (one of the guns listed as the received stolen property under Count 2) were never recovered by police, and therefore were not introduced into evidence at trial. Only the Winchester Model 52–D target rifle and the Smith & Wesson Model 19 were introduced into evidence. However, there was no testimony, of any nature, as to the operability of the guns. The guns were not test-fired nor did the gun owners, police officers or any other witnesses testify as to the operability of the guns. In fact, one witness testified that he refused to purchase the Winchester Model 52–D target rifle from Webb because the "insides" were in such poor condition. Given the complete absence of any evidence as to the operability of the guns, we find Webb's motion for acquittal on the element, *i.e.*, firearms, necessary for conviction of a felony rather than a misdemeanor should have been granted. Accordingly, Webb's fourth assignment of error is found well taken.

On consideration whereof, the court finds that the defendant was prejudiced and prevented from having a fair trial, and the judgment of the Huron County Court of Common Pleas is reversed in part. This cause is remanded to said court for proceedings not inconsistent with this decision.

*Judgment reversed in part*
*and cause remanded.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.