OPINION
Appellant, Vernon Turner, appeals from the May 4, 2000 judgment entry of the Trumbull County Court of Common Pleas, in which the trial court sentenced appellant to consecutive prison terms of five years and four years for separate violations of R.C. 2925.03(A) and R.C. 2925.03(C)(4)(e), trafficking in crack cocaine.
In January 1999, the Drug Enforcement Agency's Mobile Enforcement Team ("MET") began working in Warren, Ohio, in conjunction with local law enforcement officers in an effort to combat drug trafficking. Officer Frank Dascoulias ("Dascoulias"), of the Warren Police Department, informed MET that appellant was a significant drug dealer in the city. With the assistance of an informant ("the informant") who had been indicted for drug trafficking and who had agreed to cooperate with law enforcement officials in return for a reduced sentence, MET arranged to purchase crack cocaine from appellant on two occasions. During both transactions, MET had visual and audio surveillance in place.
The first drug transaction involving appellant occurred on February 25, 1999. Drug Enforcement Agent Dennis Hiorns ("Hiorns") watched the informant page appellant and enter the number 1200, meaning that the informant had $1,200. The transaction occurred in the informant's driveway. The informant testified that appellant arrived at the scene of the transaction with Steven Thomas ("Thomas"), Moon, and Vinnie. Thomas initially approached the informant, who was seated in his car, and told him that appellant was nervous about selling cocaine to him because he had heard that the informant was under indictment. Appellant then approached the car and spoke with the informant. After a brief conversation, appellant instructed Thomas to give the informant the cocaine, and the informant gave appellant $1,200, which had been provided to him by MET. Afterwards, the informant gave the cocaine to Hiorns. The informant was then searched to ensure that he had not kept the $1,200.
The second transaction occurred on February 28, 1999. Once again, the informant paged appellant. Appellant returned his call and said that he would meet with the informant. He then called a second time and indicated that he would send someone to make the transaction. Eventually, appellant and Thomas arrived. While appellant remained seated in his car, Thomas removed a package from the trunk of the car and handed it to the informant, who, in return, gave Thomas $1,200. Afterwards, the informant gave Hiorns one ounce of crack cocaine, and once again, the informant was searched to ensure that he had not kept the $1,200.
Appellant was indicted on May 12, 1999, for two counts of trafficking in crack cocaine, in violation of R.C. 2925.03(A) and R.C.2925.03(C)(4)(e). A jury trial was held on April 3, 4, and 5, 2000. Appellant was found guilty of both counts of the indictment. A sentencing hearing was held on April 17, 2000. On April 19, 2000, appellant filed a motion for a new trial. On May 4, 2000, appellant was sentenced to consecutive terms of five years and four years. The trial court overruled appellant's motion for a new trial on May 24, 2000. Appellant subsequently filed a "Motion for Post Verdict Hearing" pursuant to Crim.R. 33(A) and (B) on October 10, 2000. In a January 25, 2001 judgment entry, the trial court noted that it had been divested of jurisdiction to address appellant's motion because an appeal was already pending.
Appellant has filed a timely appeal and makes the following assignments of error:
 "[1.] Whether the trial judge erred in permitting, over the objection of the defense, evidence to the effect that [appellant] was known to be a drug dealer, the effect of which was that the prejudicial value or effect was much greater than the probative value of such evidence.
 "[2.] Whether [appellant's] reputation is admissible when introduced by the [s]tate if no evidence of reputation has been advanced by the defense.
 "[3.] Whether prior acts are admissible if they are not produced for the purpose to prove a scheme or identification or any other exceptions which were not present in the issues of this case.
 "[4.] Whether the trial judge's charge to the [j]ury was so erroneous or defective or unclear as to [be] tantamount to no charge at all or to constitute [p]lain error where the jury was only charged that circumstantial evidence should be treated just as direct evidence, without going further and charg[ing] the jury that when the inference from the direct evidence is not an inference of guilt alone, then such inference may not be an inference upon which a conviction may be based.
 "[5.] Whether, while the trial judge did not err in charging the jury that they may not make an inference from another inference, he erred in charging the jury that they may however draw more than one inference from the same facts or circumstances without going further and charge the jury that in such event, if such other inferences are equally consistent with innocence as with guilt, then they must be resolved in favor of the defendant.
 "[6.] Whether the trial judge's refusal to hold a hearing to determine whether [appellant's] constitutional rights may have been affected by jury misconduct is contrary to the law."
 Appellant's first two assignments of error relate to the trial court's admission into evidence of the statement by Hiorns that Dascoulias told him that appellant was a "significant drug dealer" in Warren. Because these assignments of error are interrelated, they will be treated in a consolidated fashion.
At trial, appellant objected to Hiorns testimony regarding Dascoulias' statement as hearsay. On appeal, he has taken exception to it, in part, on the grounds that the probative value of the testimony is substantially outweighed by the danger of unfair prejudice. We would note that Evid.R. 103(A)(1) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * a timely objection * * * appears of record stating the specific ground of objection, if the specific ground of objection was not apparent from the context * * *." In this case, appellant failed to raise the issue of unfair prejudice at trial and has thereby waived the issue. Nevertheless, we will address the merits of his argument.
The state offered testimony at issue in order to explain why Hiorn had chosen to investigate appellant. Generally, a law enforcement officer is permitted to testify as to the underlying reasons for his conduct, even if that testimony includes statements made by a third party. State v.Stargell (Mar. 31, 1989), Trumbull App. No. 3884, unreported, 1989 WL 357040, at 2. In State v. Blevins (1987), 36 Ohio App.3d 147, the Tenth Appellate District set forth the test for the admissibility of such testimony: "[t]he conduct to be explained should be relevant, equivocal and contemporaneous with the statements. * * * Additionally, such statements must meet the standard of Evid.R. 403(A)." Evid.R. 403(A) states that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Appellant has failed to maintain his hearsay objection on appeal and has thereby waived it. See App.R. 12. Even if he had maintained his hearsay objection, in light of Blevins, the admissibility of the statement would still depend on a weighing of its probative value against its prejudice, which is the issue that appellant has, in fact, raised.
In State v. Faris (Mar. 24, 1994), Franklin App. No. 93APA08-1211, unreported, 1994 WL 97095, at 2, a detective testified that he had received an anonymous tip about a case after it had been the subject of a segment of the television program "Crime Stoppers." The detective testified that he received written documentation from "Crime Stoppers" and it indicated that the defendant was responsible. Id. The Faris
court held that the fact that he received information from "Crime Stoppers" was admissible for foundation purposes, but the statement that the information he received indicated that the defendant was responsible for committing the crime should have been excluded pursuant to Evid.R. 403(A), because of the potential for misunderstanding by the jury. Id.
In the instant case, it would have been appropriate for Hiorns to testify that he spoke to Dascoulias at the start of his investigation. However, it was unnecessary for him to state that Dascoulias had identified appellant as a "significant drug dealer" in order to explain the course of his investigations in Warren. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Dascoulias' statement that appellant was a "significant drug dealer," does not make it any more or less probable that appellant sold crack cocaine to an informant on February 25 and 28, 1999. Further, that statement is of no specific probative value, while being significantly prejudicial to appellant. Therefore, we agree with appellant that the statement was improperly admitted into evidence.
However, "[w]here evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." State v. Williams
(1983), 6 Ohio St.3d 281, 290, citing Harrington v. California (1969),395 U.S. 250, 254. See also, Stargell, supra, unreported, 1989 WL 357040, at 3. In this case, there was testimony that prior to both buys, the informant had paged appellant and spoken to him by phone; appellant had been present at both transactions; appellant had personally accepted $1,200 from the informant during the February 25 transaction and instructed Thomas to give the informant the cocaine; and, although MET members could not positively identify appellant, they maintained audio surveillance of the first transaction and video and audio surveillance of the second transaction and were able to confirm that the money that they had provided for the buy had been used by the informant to purchase cocaine. We conclude that there was overwhelming proof of appellant's guilt and that Hiorns' testimony regarding Dascoulias' statement amounted to harmless error. Therefore, appellant's first and second assignments of error lack merit.
In his third assignment of error, appellant avers, without reference to the record, that testimony that appellant was a known drug dealer was inadmissible evidence of other crimes, wrongs, or acts to prove his character and show that he acted in conformity therewith. We disagree.
While appellant fails to identify, in his appellate brief, the portions of the record containing testimony that he was a known drug dealer, our review of the record indicates that two witnesses gave such testimony: Hiorns and the informant. Hiorns testimony, to the effect that he had been told appellant was a significant drug dealer, was addressed in the first two assignments of error where we concluded that its admission into evidence was harmless error.
On direct examination, the informant testified as follows:
 "[Question:] Okay, and was the fact did you give them the name of [appellant] because of the fact that you had bought from him in the past?
"[Answer:] Yes.
 "[Question:] And so you believed you could buy from him again?
"[Answer:] Yes.
 "[Question:] And when you bought from Vernon Turner in the past, you would buy certain weights of drugs, correct?
"[Answer:] Yes.
 "[Question:] Had he sold you crack cocaine in the past?
"[Answer:] Yes.
"* * *
 "[Question:] Okay, and did you have a system in place with Vernon from your past dealings as a way to page him to let him know you wanted to buy narcotics?
 "[Answer:] Yes, I page him and put in the number and then put in how much I had.
 "[Question:] Okay, when you say the number, that is the number to call you back at?
"[Answer:] Yeah.
 "[Question:] And when you say put in how much I had, what do you mean?
 "[Answer:] Like I put how much money I had behind the number."
 Appellant never objected to any of this testimony at trial and thereby waived his right to challenge this testimony on appeal. Nevertheless, we will examine the merits of his argument.
Evid.R. 404(B) states that: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person * * *. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity * * *." (Emphasis added.) "Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime." State v. Smith (1992), 84 Ohio App.3d 647,666. For the state to introduce evidence of other crimes to prove identity, "[t]here must be some similarity of methodology employed which itself would constitute probative evidence of the probability that the same person * * * committed both crimes. In such event, eye-witness proof of the identity of the perpetrator of the prior offense is relevant proof on the issue of the identity of the perpetrator of the offense in question." State v. Hector (1969), 19 Ohio St.2d 167, 177.
One method of proving identity is by establishing a modus operandi applicable to the crimes with which a defendant was charged. State v.Lowe (1994), 69 Ohio St.3d 527, 531. In this case, the informant testified at trial that in past dealings with appellant, when he paged appellant, the informant would enter his own phone number followed by the dollar amount of cocaine that he wished to purchase. The same procedure was used during the course of the two controlled buys made by the informant from appellant that MET supervised. Therefore, the informant's testimony as to his past cocaine purchases from appellant was admissible for the purpose of proving identity.
Appellant's fourth and fifth assignments of error both involve the trial court's failure to properly instruct the jury and will be treated in a consolidation fashion. Appellant seemingly makes two arguments in his brief submitted to this court. First, the jury could have drawn an inference of innocence from the evidence because the evidence connecting appellant to the crimes charged was circumstantial. Therefore, the jury should have been instructed that when an inference other than one of guilt can be drawn from the evidence, the evidence does not support a finding of guilty. Second, mere presence alone at the scene of the crime is not sufficient to support a conviction, and the jury should have been instructed accordingly.
We would note, initially, that appellant never objected to the jury instructions at trial. Pursuant to Crim.R. 30(A), a party may not object on appeal for a failure to give a jury instruction unless it made the objection at trial before the jury retired to consider its verdict. Therefore, in the absence of plain error, appellant has waived his objection to the instructions. State v. Williford (1990),49 Ohio St.3d 247, 251.
With respect to appellant's first argument regarding what he asserts to be the circumstantial nature of the evidence presented by the state, we would note that the prosecution of appellant was not based solely on circumstantial evidence — the informant testified that he handed appellant $1,200 in exchange for cocaine. Even if appellant's conviction rested solely upon circumstantial evidence, the Supreme Court of Ohio held in State v. Jenks (1991), 61 Ohio St.3d 259, 273, that "when the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction."
Prior to Jenks, if the state relied entirely on circumstantial evidence to prove an essential element of a crime, the trial court was required to give an instruction that the circumstantial evidence thus relied upon must be irreconcilable with any reasonable theory of the accused's innocence. Id. at 262. Subsequent to Jenks, that is no longer the rule in Ohio. Therefore, in view of the holding in Jenks and the fact that there was direct evidence, as well as corroborative circumstantial evidence, linking appellant to the crimes for which he was indicted, we find no merit in appellant's argument that the trial judge committed plain error in failing to instruct the members of the jury upon the inferences that they could legitimately draw from the evidence.
With respect to appellant's second argument, that the jury should have been instructed that appellant's mere presence at the scene of the offense was insufficient to support a conviction, we disagree with the assertion that appellant was merely a spectator to these transactions. During the February 25 incident, the informant testified that he handed $1,200 directly to appellant and that appellant instructed Thomas to give the cocaine to the informant. On February 28, the informant had paged appellant to arrange the drug buy, and appellant had called him twice to confirm the details. Therefore, we find the evidential table indicates that appellant's involvement in these transactions was more than that of a mere spectator and no instruction on "mere presence alone" was required.
In view of the above, appellant's fourth and fifth assignments of error are without merit.[1]
In his sixth assignment of error, appellant contends that in the event of an ex parte communication between the judge and a juror, a hearing must be held to determine the prejudicial effect of the communication. We disagree.
Appellant filed a motion for a new trial on April 19, 2000, alleging that due to numerous spectators in the back of the courtroom, a juror had approached the trial judge and expressed concern for his safety. Appellant derived his version of events from an article that appeared in the April 5, 2000 edition of the Warren Tribune Chronicle.[2] In its response to appellant's motion for a new trial, the state presented the following version of events:
 "* * * the individuals in the courtroom for the duration of the trial were there in support of [appellant] and possibly as his behest. While the State of Ohio is familiar with a number of [appellant's] supporters, they were not there for the benefit of the State of Ohio. One juror did express curiosity to the Court as to the reason for the presence of [appellant's] supporters. Upon inquiry by the Court, the juror stated that he did not feel threatened by the spectators. The Court then advised the juror to immediately call it to the Court's attention if he or anyone on the jury were approached of threatened."
 The state's assistant prosecuting attorney averred in her response to appellant's motion that she was present during the exchange, and then attested to the foregoing version of events.[3] The trial court overruled the motion in a May 24, 2000 judgment entry without holding a hearing on the matter.
The Supreme Court of Ohio has held that "[t]o prevail on a claim of prejudice due to an ex parte communication between judge and jury, the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters." (Emphasis added.)State v. Jenkins (1984), 15 Ohio St.3d 164, 236. Discussions between a judge and a juror of legal issues involved in the case, applicable law, a charge to the jury, or a fact in controversy could potentially involve substantive matters. See State v. Musgrave (Apr. 24, 2000), Knox App. No. 98CA10, unreported, 2000 WL 502688, at 9.
In addressing the issue of communications between a juror and a third party, the Second Appellate District observed that not all such communications require a new trial. State v. Parks (Mar. 22, 1996), Montgomery App. No. CA 14906, unreported, 1996 WL 125919, at 3. Under such circumstances, "a new trial is appropriate only when a defendant's `substantial rights' are `materially affected.'" Id. In this case, there is no evidence of a nexus of an alleged conversation between the judge and the juror and a prejudicial effect on jury deliberations negating a fair trial.
Parallel authority supporting the proposition that something more than a passing comment in a newspaper article is sufficient to upset a jury verdict is provided by the aliunde rule. The essence of the rule is that "the verdict of a jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence aliunde, i.e., by evidence from some other source." State v. Adams (1943), 141 Ohio St. 423, 427.
The aliunde rule derives, in part, from considerations of public policy. A failure to adhere to the rule "would encourage further litigation and indefinitely postpone its termination * * *." Id. The rule is a recognition of this "state's choice to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties." State v. Doan (Sept. 29, 1995), Hamilton App. No. C-940330, unreported, 1995 WL 577524, at 2.
To impeach a verdict on the basis of juror misconduct, a party must lay a foundation of independent evidence. State v. Schiebel (1990),55 Ohio St.3d 71, 75. The source of this independent evidence must have firsthand knowledge of the improper conduct, and it must come from someone other than a juror. Id. Consequently, a juror's testimony is not evidence aliunde, nor is the testimony of an attorney who reports what he has been told by a juror. Id. at 75-76.
In the instant case, appellant has failed to produce competent, independent evidence that an improper private contact occurred between the judge and a juror that involved a discussion of substantive matters. Further, appellant has failed to identify the juror in question and, as far as this court can determine from the record, has made no effort to do so. Additionally, although an ex parte communication may have occurred, there is no competent evidence that substantive matters were discussed.[4] Appellant would have us remand this matter for a hearing based upon an unsubstantiated comment appearing in a newspaper article. We decline to do so. Appellant has failed to provide the necessary foundation of extraneous, independent evidence that would require such a result.
The determination as to whether a motion for a new trial warrants an evidential hearing is within the discretion of the trial court. Statev. Clark (Nov. 22, 2000), Montgomery App. No. 17839, unreported, 2000 WL 1726851, at 2. In this case, given the absence of competent, independent evidence supporting appellant's allegations, the trial judge did not abuse his discretion in overruling appellant's motion a new trial without first holding a hearing.
Further, appellant admitted in his motion for a new trial that he became aware of the alleged ex parte communication during the course of jury deliberations. He had a duty to bring this matter to the attention of the trial court at that time. By failing to raise the matter at a time when the trial court could have corrected the problem, he effectively waived the issue.
In view of the foregoing, appellant's sixth assignment of error lacks merit.
For the reasons discussed above, the judgment of the Trumbull County Court of Common Pleas is affirmed.
JUDGE DONALD R. FORD, O'NEILL, P.J., CHRISTLEY, J., concur.
[1] At oral argument, appellant indicated that one of his concerns with the jury instructions was that an instruction should have been given as to the credibility of the informant. An informant instruction, although preferable, is not required when the jury was aware that the informant was a narcotics addict who was paid by the police, and the informant's testimony was corroborated. State v. Draughn (1992), 76 Ohio App.3d 664,675. In the instant case, the informant testified as to his criminal record. Also, much of his testimony was corroborated by MET agents. Therefore, an instruction concerning informant credibility was not plain error. The rule as to jury instructions regarding informant testimony should be distinguished from that regarding accomplice testimony. SeeState v. Webb (1991), 72 Ohio App.3d 749, 752 ("[i]t is well-settled law that accomplice testimony is inherently suspect, and, therefore, failure to give a cautionary jury instruction as to such testimony constitutes error").
[2] The jury reached its verdict on April 5, 2000. Appellant's sentencing hearing was held on April 17, 2000.
[3] There is no mention in the record as to when or where the ex parte
communication occurred.
[4] Although the assistant prosecuting attorney averred in her response to appellant's motion for a new trial that an ex parte communication occurred, appellant has made no effort to memorialize the occurrence in the record in a form that has evidential quality.