OPINION
{¶ 1} Defendant-appellant, John Stafford, appeals a decision of the Mason Municipal Court convicting him of disorderly conduct after a jury trial. We affirm the trial court's decision.
 {¶ 2} On April 6, 2001, an altercation occurred at the Aces and Eights Harley Davidson Dealership in Mason, Ohio. At trial, two conflicting versions of the events were presented. According to the State's witnesses, Aces and Eights was conducting a large event designed to draw people into the store. A local radio station was broadcasting from the store, and Pete Rose was signing autographs. Several hundred people attended the event, including families with children and a senior citizen's group. Marketing Manager Ann Shedlock testified that she was approached by appellant, who had entered the store with members of his family. Appellant asked Shedlock if the motorcycles on display were for sale. Shedlock responded by explaining the store's unusual marketing strategy. The dealership sells motorcycles at lower prices than other dealerships by use of a lottery system. Potential buyers place their names into a drawing for motorcycles they would like to purchase. When a name is drawn, that customer may purchase the motorcycle.
 {¶ 3} According to Shedlock, appellant turned to his family members and said, "If you want to buy a bike, you have to go through a fucking lottery." Shedlock was offended by the manner in which appellant spoke and what he said. She told appellant that if he did not like the lottery system, he was welcome to go to other dealerships where he could directly purchase a motorcycle, and she gave him names of other local shops. In response, appellant turned to Shedlock and said, "I wasn't talking to you, bitch," while raising his right hand.
 {¶ 4} Shedlock asked the sales manager, David Regan, to come help her because she felt threatened by the way appellant was speaking and because others could hear his language. When appellant was asked to leave the store, he replied, "This is bullshit," and made fun of Shedlock's statement that she felt threatened by his presence. Shedlock and Regan asked appellant to "please leave" several times, but appellant and members of his group repeatedly refused and argued with the employees. Other employees responded and tried to help escort the group out of the store. A scuffle ensued as appellant's group was approaching the door. According to the state's witnesses, appellant's son put his hands on the throat of Ray Phipps, owner of the dealership, and called him a "fat mother fucker." Once outside the store, appellant stated that he was going to call the police, that he would sue Phipps, that his brother was an attorney and he was "going to get your ass" because "your kind of people" do not treat "our kind of people" that way. According to Shedlock, appellant was loud, offensive and obnoxious and attracted attention. She noticed some customers leaving during the altercation.
 {¶ 5} According to the defense version of the events inside the dealership, appellant inquired about purchasing a motorcycle and Shedlock was rude and asked them to leave for no reason. According to defense witnesses, appellant was calm, polite and did not use any type of profanity. Members of appellant's group testified that they did not understand why they were being asked to leave and that Aces and Eights employees rushed them, pushing and shoving the group out the door. Appellant and his son allege that they were choked, punched and kicked by the employees.
 {¶ 6} Warren County Sheriff's Deputies responded to a call that there was an altercation at the dealership. As with the events inside the store, the police version of what occurred outside the store differs dramatically from appellant's version of the events. Deputy Joseph Houndshell testified that while conducting his investigation, appellant demanded that the Aces and Eights employees be arrested. According to deputies, appellant referred to people walking into the store by yelling that he was better than "these people" and calling them "gang members" and "damn bikers." Deputy Houndshell was afraid that appellant's conduct would cause further fighting to erupt and told appellant several times to calm down and to keep his comments to himself. He told appellant that he would be arrested for disorderly conduct if he persisted.
 {¶ 7} According to Deputy Houndshell, appellant continued yelling and screaming and told the deputy, "Look at me and look at them, who's going to have more clout in the courtroom?" The deputy explained to appellant that there were conflicting stories about what had happened inside and that if either side wanted to press charges, they could go to the prosecutor's office on Monday to do so. Appellant, who owns a jewelry store, told the deputy that he owned a multi-million dollar business and that "he was not like these people," that he "was not going to be treated like these people" and "that these people needed to go to jail." The deputy again warned appellant to calm down. He stated that he was unable to get statements from appellant's family because of appellant interjecting into the conversation and that appellant made it difficult for him to complete his investigation.
 {¶ 8} Deputy Houndshell testified that when he asked appellant to leave the property, appellant refused. Appellant stated that he knew his rights, and would only leave if the owner came out of the store and told him to leave. The deputy told appellant he would ask the owner to come out, but because of appellant's prior actions of screaming and yelling, he warned him that the extent of the conversation would be Phipps telling appellant to leave and that if appellant said anything else, he would be arrested. According to the deputy, Phipps came out and calmly asked appellant to leave the property. Appellant began pointing and yelling things like, "you will get yours on Monday." Appellant was arrested by Houndshell and another deputy.
 {¶ 9} Deputy Brian Dooley, who was also at the scene, gave the same version of events as Deputy Houndshell. He stated that appellant's conduct made it hard to do any kind of investigation and that he was demanding that everyone be arrested. Deputy Dooley agreed with Deputy Houndshell that appellant was warned to calm down and to be quiet at least half a dozen times.
 {¶ 10} Appellant and members of his family testified that the police were biased when they arrived because they knew the employees in the store. According to appellant's witnesses, the police were rude, ignored the fact that they were injured, and did not adequately investigate the altercation.
 {¶ 11} Appellant and his family testified that he did not use profanity, call names, or make derogatory comments. According to these witnesses, appellant was polite and, though upset about the altercation, he was calm. Appellant's family members testified that the police were rude, made them stand outside in the rain, and would not allow them to either take their statement forms home to complete or to go sit down in a nearby restaurant to fill out the statements together.
 {¶ 12} Appellant was charged with disorderly conduct in violation of R.C. 2917.11. Pursuant to appellant's request, the matter was heard by a jury. After considering the evidence, the jury found appellant guilty of persisting in disorderly conduct, which is a fourth degree misdemeanor under R.C. 2917.11(E). He was sentenced to a fine of $200 and 30 days in jail, which was stayed on the condition of two years good behavior and attendance at an anger management or sensitivity program.
 {¶ 13} Appellant now appeals his conviction for disorderly conduct and raises six assignments of error.
 Identification of the Offense {¶ 14} In his first assignment of error, appellant argues that although he was charged with violating R.C. 2917.11, the state failed to specify which particular subsection he allegedly violated. He contends that the failure to specify a subsection violated his due process rights. He also alleges that "at no point in time prior to the conclusion of the case did the City of Mason allege that there had been a violation of Revised Code Section 2917.11(E)(3), which is a misdemeanor of the fourth degree."
 {¶ 15} Appellant was charged with a violation of R.C. 2917.11. This statute states:
 {¶ 16} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
 {¶ 17} "(1) Engaging in fighting, in threatening harm to person or property, or in violent or turbulent behavior;
 {¶ 18} "(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;
 {¶ 19} "(3) Insulting, taunting or challenging another, under circumstances in which such conduct is likely to provoke a violent response;
 {¶ 20} "(4) Hindering or preventing the movement of persons on a public street, road, highway or right of way * * *;
 {¶ 21} "(5) Creating a condition that is physically offensive to persons or that prevents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.
 {¶ 22} "* * *
 {¶ 23} "(E) Whoever violates this section is guilty of disorderly conduct. Except as provided in this division, disorderly conduct is a minor misdemeanor. If the offender persists in disorderly conduct after reasonable warning or request to desist * * *, disorderly conduct is a misdemeanor of the fourth degree."
 {¶ 24} The complaint filed against appellant is a fill-in-the-blank form charging disorderly conduct. After the initial language, the form states "complete one of the following." The first section states "(M-M)" and provides a space for the complainant to indicate the type of conduct engaged in and closely mirrors the language of subsections (1) through (5). This is followed by a second section which states "OR (M-4 — Jail Offense)" and, as filled in on the instant complaint, reads: "John Stafford[,] after being reasonably warned or request [sic] to desist, did persist in Disorderly Conduct, In Violation of Section 2917.11 of the ORC code [sic].
 {¶ 25} Appellant filed a request for a bill of particulars. In this request, appellant listed several specific items he wanted in the bill of particulars, including location, times, dates, chronological order of events, and names and addresses of witnesses. The motion does not request any further clarification of the nature of the charges. The state responded with a bill of particulars which stated: "On or about 6 day [sic] April, 2001, defendant, after being warned to desist, defendant [sic] threatened harm to persons or property." Appellant did not request any further clarification of the charges against him. At trial, appellant made a Rule 29 motion at the close of the state's case. Although the court discussed the fact that no particular subsection was specified and that the jury would have to determine if appellant's conduct met any of the definitions of disorderly conduct specified, appellant's counsel failed to make any objection or request regarding the lack of specificity. Similarly, at the close of appellant's case, his counsel again made a Rule 29 motion, this time acknowledging that the state was proceeding under subsections (2), (3) and (5).
 {¶ 26} The purpose of an indictment and a bill of particulars is to inform the defendant of the nature of the charges against him so that he can adequately prepare a defense. See State v. Brown (1993),90 Ohio App.3d 674; State v. Webb (1991), 72 Ohio App.3d 749. We find that appellant was in no way prejudiced by the failure of the state to include a specific subsection. Contrary to appellant's argument that he was not informed that the state was proceeding under subsection (E), he was charged with a violation of that section in the complaint. Subsection (E) requires conduct comprising one of the elements under section (A), along with the element of persisting in the conduct after being warned to desist.
 {¶ 27} Additionally, appellant has failed to demonstrate how the lack of a specific subsection prejudiced his defense. Appellant filed a discovery request and was given police reports, witness statements and witness lists. Appellant hired a private investigator to determine if there were other witnesses to the altercation who had not been mentioned in the police report. Appellant presented witnesses who substantiated his version of the events. We find no evidence of any type of prejudice to appellant's defense. Appellant's first assignment of error is overruled.
 Motion to Suppress {¶ 28} In his second assignment of error, appellant contends that the trial court erred by denying his motion to suppress evidence. Appellant filed a pretrial motion to suppress any statements made by appellant after he was arrested. In his brief, he alleges that the trial court allowed "extensive testimony" from the deputies concerning statements allegedly made by appellant while in custodial interrogation despite the fact that Deputy Houndshell testified that appellant was not read his Miranda rights.
 {¶ 29} At trial, on cross-examination, appellant's attorney asked Deputy Houndshell if he read appellant his Miranda rights. The deputy responded that he did not read appellant his rights after being arrested because he was not interrogated after the arrest. Despite appellant's arguments to the contrary, Deputy Houndshell correctly articulated the fact that Miranda warnings were not required under these circumstances.
 {¶ 30} Before custodial interrogation occurs, a suspect must be given his Miranda rights. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602. In this case, appellant was questioned during the police investigation. A police interview, even of a person suspected of a crime, does not automatically convert the encounter into a custodial situation. SeeState v. Fille, Butler App. No. CA2001-08-066, 2002-Ohio-3879. Once appellant was arrested for disorderly conduct, no questioning occurred. Although appellant mentions that he answered questions asked by Deputy Houndshell's supervisor after he was arrested,[1] there was no testimony at trial regarding these statements.
 {¶ 31} Appellant also argues that he was not allowed to speak to his attorney both before and after his arrest. While the investigation was ongoing, appellant's brother, Don Stafford, arrived and called a third brother, who is an attorney. Don Stafford testified that Deputy Houndshell would not allow appellant to speak with his attorney at the scene both prior to and following his arrest.
 {¶ 32} After reviewing the testimony, we find appellant was not unconstitutionally denied his right to counsel. Although appellant tried to take his brother's cell phone and talk to his attorney/brother, the police investigation into the inside altercation was ongoing. No prejudice occurred when appellant was arrested and tried to speak with his brother/attorney immediately after his arrest because he was not questioned by the police regarding the behavior that led to his arrest. No statements were presented at trial that were the result of appellant's failure to speak to his attorney. The deputies witnessed appellant's disorderly behavior and this alone led to his arrest. The failure to speak to an attorney is irrelevant in regards to the evidence used to convict appellant of this charge.
 Withholding of Evidence {¶ 33} In his third assignment of error, appellant contends that the prosecutor withheld evidence that he was required to disclose pursuant to Crim.R. 16. In Brady v. Maryland, the Supreme Court of the United States held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment." Brady v. Maryland
(1963), 373 U.S. 83, 87, 83 S.Ct. 1194.
 {¶ 34} Evidence is material under Brady "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Statev. Johnston (1988), 39 Ohio St.3d 48, paragraph five of the syllabus. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.
 {¶ 35} Appellant argues that the state did not produce "extensive photographic evidence" until one day before trial, did not produce witness statements until midway through trial, failed to fully produce a witness statement until the trial was nearly completed, and failed to provide photographs of appellant's injuries from the alleged assault on appellant. Appellant does not explain the relevance of the "extensive photographic evidence" or the various statements to his defense. Much of this evidence, including the pictures of the alleged assault were irrelevant to the charges before the court. Appellant was charged with disorderly conduct, and was not on trial for assaulting the Aces Eights employees.[2]
 {¶ 36} Furthermore, although appellant alleges in general that the withholding of this evidence undermined confidence in the outcome of the trial, we find nothing that suggests the result of the trial would have been different. Appellant received the evidence he alleges the prosecutor withheld. Much of the evidence related to the events occurring inside the store, not appellant's disorderly conduct. The witness statement appellant argues was "not fully provided" was simply a failure to photocopy one line of the statement which was written on the back of the original. In addition, the witness was one of appellant's family members, and a witness for the defense. One of the sets of photographs appellant alleges were withheld are photos of appellant's wrists taken at the jail.[3] The prosecutor was unaware these photographs existed until defense counsel informed him of their existence and they have little relevance to the question of whether appellant was guilty of disorderly conduct. We find no merit in appellant's argument that there is a reasonable probability that the outcome of the trial would have been different if this evidence had been provided at an earlier time. Appellant's third assignment of error is overruled.
 Prosecutorial Misconduct {¶ 37} Appellant contends that the totality of the prosecutor's conduct prevented him from having a fair trial. He argues that the prosecutor told defense counsel to "kiss his ass" in front of the jury, threatened to file a complaint against defense counsel, and inquired about prior bad acts of appellant when the acts were inadmissible.
 {¶ 38} The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith
(1984), 14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940.
 {¶ 39} No "bad acts" evidence was presented to the jury. The prosecutor questioned appellant regarding whether he had ever had complaints about his behavior in public. Appellant responded that there had been no complaints. The exact comments made by the prosecutor to defense counsel in regards to filing a complaint and the "ass" comment are unclear. Defense counsel had just been reprimanded by the trial court for badgering a witness. He asked the witness if he remembered bruising on a member of appellant's family, then attempted to show the witness a picture, apparently doing so without first identifying or showing the picture to the prosecutor. The following exchange between counsel illustrates the contentious nature of counsel for both parties:
 {¶ 40} "Prosecutor: Just for the record, I have never seen that —
 {¶ 41} "Defense Counsel: That's absolutely not true.
 {¶ 42} "Prosecutor: I am going to have to file a (inaudible) complaint against him —
 {¶ 43} "Trial Court: Let's let the jury take a brief recess.
 {¶ 44} "Prosecutor: (Inaudible)
 {¶ 45} "Defense Counsel: I am sorry?
 {¶ 46} "Prosecutor: (inaudible) your ass.
 {¶ 47} "Defense Counsel: Your honor, I want sanctions for this.
 {¶ 48} "Trial Court: I will tell you, you're both going to be found in contempt or at least one of you, if you don't stop what you're doing. That's it. Relax for fifteen minutes and come back and start talking again.
 {¶ 49} "(A recess was taken)
 {¶ 50} "Trial Court: Okay, let's get back to this. No more name calling and no more pointing.
 {¶ 51} "Defense Attorney: Your Honor, I didn't call any names, just so the record is clear.
 {¶ 52} "Trial Court: I heard somebody say ass.
 {¶ 53} "Defense Counsel: That was [the prosecutor], he told me to kiss his ass.
 {¶ 54} "Prosecutor: I did not.
 {¶ 55} "Defense Counsel: Yes, you did. * * *."
 {¶ 56} We agree that some of the remarks made by the prosecutor in front of the jury were unprofessional. However, counsel for both parties were at times antagonistic and discourteous to one another. The two sides presented diametrically opposed versions of the events. Appellant, who began crying while testifying, was obviously emotional about the events. He was represented by his brother who was zealous and emotional in his defense. Considering the prosecutor's comments in the context of the entire trial, we find appellant was not denied a fair trial by the prosecutor's comments. Appellant's fourth assignment of error is overruled.
 Jury Instructions {¶ 57} In his final assignment of error, appellant contends that the trial court improperly instructed the jury concerning the law of disorderly conduct. Appellant argues that he submitted proposed jury instructions, but the trial court instead devised different jury instructions. Appellant argues that the trial court's instructions were ambiguous and vague.
 {¶ 58} Jury instructions must contain "all matters of law necessary for the information of the jury in giving its verdict." R.C.2945.11. A trial court must give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as the fact finder. State v. Comen (1990), 50 Ohio St.3d 206, 210. When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989),44 Ohio St.3d 64, 68.
 {¶ 59} Appellant argues that the trial court's use of the words "breach of peace" and "likely to inflict injury" are not part of the statutory criteria of the offense of disorderly conduct and confused the jury. While not found in the statute, the phrases above are used to state the requirement that words alone are not punishable, unless they amount to "fighting words." The phrases come from a decision of the Ohio Supreme Court interpreting spoken words in terms of the disorderly conduct statute. See State v. Hoffman (1979), 57 Ohio St.2d 129, paragraph one of the syllabus; see, also, Cincinnati v. Karlan (1974) 39 Ohio St.2d (1974).
 {¶ 60} The trial court's jury instructions were taken from Ohio Jury Instructions, which uses these phrases. Interestingly, we note that although appellant argues in his brief that the trial court did not use his jury instructions, appellant's proposed instructions are also taken from O.J.I. and are the same as those given by the trial court, using the language he now objects to. Appellant's fifth assignment of error is overruled.
 {¶ 61} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Dissatisfied with the way the deputies were handling the situation, appellant demanded that they call their supervisor. Sergeant Black responded to the scene and in order to determine what appellant's complaints were, asked appellant questions regarding the investigation and his arrest.
[2] Appellant was initially charged with two counts of assault after Phipps filed a complaint with the prosecutor. However, these charges were dismissed prior to trial and appellant's trial was on the disorderly conduct charges only.
[3] These photographs were apparently taken because appellant complained that his handcuffs were hurting his wrists. Jail personnel took photographs after appellant threatened them with a lawsuit.