*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0216p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALAN GEBOY,
　　　　　*Petitioner-Appellant/Cross-Appellee,*

　　　*v.*

ANTHONY BRIGANO, Warden,
　　　　　*Respondent-Appellee/Cross-Appellant.*

Nos. 05-3200/3201

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00552—George C. Smith, District Judge.

Submitted: July 17, 2006

Decided and Filed: June 11, 2007

Before: BOGGS, Chief Judge; COLE, Circuit Judge; ROSEN, District Judge.[*]

---

**COUNSEL**

---

**ON BRIEF:** Stuart A. Cole, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. Alan Geboy, Lebanon, Ohio, pro se.

---

**OPINION**

---

ROSEN, District Judge.

## I. *INTRODUCTION*

Petitioner/Appellant/Cross-Appellee Alan Geboy was tried and convicted by a Union County, Ohio jury on nine counts of gross sexual imposition, two counts of felonious sexual penetration, and five counts of rape, while being acquitted on two other counts of felonious sexual penetration. These charges arose from allegations that Petitioner sexually abused his biological daughter over an eleven-year period from 1988 to 1999, when his daughter was between the ages of eight and nineteen years old. Following his conviction, Petitioner was sentenced to life imprisonment for each count of felonious sexual penetration, as well as a combined term of over fifty-three years of imprisonment for the remaining fourteen counts.

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

After exhausting his state remedies, Petitioner commenced the present habeas action under 28 U.S.C. § 2254, advancing five claims of constitutional error. The district court granted the writ as to the first of Petitioner's claims, but found that his remaining claims lacked merit. The Respondent warden, Anthony Brigano, now appeals this grant of relief to Petitioner, and Petitioner, in turn, challenges the dismissal of his remaining claims. For the reasons set forth below, we reverse the district court's grant of relief to Petitioner and affirm the district court's denial of relief as to the two other claims for which Petitioner has secured a certificate of appealability.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

### A.        The Facts Underlying Petitioner's State Court Conviction

The Ohio Court of Appeals summarized the pertinent facts and circumstances of the underlying state court proceedings as follows:

> [T]he Logan County Grand Jury returned an eighteen-count indictment against [Petitioner], a resident of Bellefontaine, based upon evidence that he had been sexually molesting his biological daughter, now twenty-one years[] old, since the fall of 1988. [Petitioner] entered a plea of not guilty. Subsequently, the case was tried to a jury and [Petitioner] was convicted on all eighteen counts. This court reversed that conviction in *State v. Geboy,* 145 Ohio App.3d 706, 764 N.E.2d 451, 2001-Ohio-2214. Thereafter, a second trial commenced in March 2002, at which time the state presented testimony from seven witnesses, including the alleged victim, hereinafter D.D.[1]

> According to D.D., [Petitioner] began exposing himself to her when she was eight years old. She alleged that, over time, the abuse escalated from fondling and rubbing to oral sex and then ultimately to vaginal penetration. While in her first quarter of college at The Ohio State University, Lima Campus, a friend, Josh McKinley, confronted D.D. with suspicions that she was being sexually abused. D.D. admitted to McKinley that her father was abusing her, but made him swear not to tell. Initially, the boy complied with her request. However, after an incident in which D.D. alleged her father accosted her in the shower, McKinley drove to Bellefontaine from Lima and confided what he knew to D.D.'s older sister, Kelly. Kelly confronted D.D. with the information and escorted her to the police to file a report.

> [Petitioner] presented eight witnesses in his defense. Ultimately, the jury found [Petitioner] guilty of all but two counts contained in the indictment.

*State v. Geboy,* No. 14-02-09, 2003 WL 178616, at *1 (Ohio Ct. App. Jan. 28, 2003). We recount the factual record in greater detail below, as pertinent to the issues presented on appeal.

### B.        Procedural Background

As noted by the Ohio appellate court, a Logan County, Ohio, grand jury issued an eighteen-count indictment on April 10, 2000, charging Petitioner Alan Geboy with nine counts of gross sexual imposition, four counts of felonious sexual penetration, and five counts of rape. These charges were based upon Petitioner's alleged sexual abuse of his biological daughter, Jodi Geboy, over an eleven-year period spanning from 1988 to 1999, when Jodi was between the ages of eight and nineteen years old. Petitioner initially was found guilty on all eighteen counts, but this conviction was

---

[1] The Ohio Court of Appeals refers to Petitioner's daughter, Jodi Geboy, as D.D.

overturned by the Ohio Court of Appeals on the ground that the prosecutor improperly commented upon and elicited testimony regarding Petitioner's failure to profess his innocence to the authorities. *See State v. Geboy,* 764 N.E.2d 451, 458-59 (Ohio Ct. App. 2001).

Following a successful effort to transfer venue in light of extensive local publicity, Petitioner was retried by a Union County, Ohio jury and found guilty on all counts except two of the four counts of felonious sexual penetration. Petitioner subsequently was sentenced to life imprisonment for each of the two counts of felonious sexual penetration, plus consecutive prison terms totaling fifty-three years and three months for the remaining counts. On appeal, the Ohio Court of Appeals rejected Petitioner's various challenges to his convictions, but remanded for resentencing in light of the trial court's failure to make a sufficient record of its reasons for imposing consecutive sentences. On remand, the trial court imposed the same sentence, and Petitioner's remaining state court appeals were unavailing.

Petitioner then commenced the present action on June 18, 2003 by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Southern District of Ohio. In his petition, Petitioner asserted five claims for relief:

> 1) that the evidence was insufficient to sustain Petitioner's conviction of the felonious sexual penetration offenses charged in counts nine and ten of the indictment, where he did not live at the family home during the relevant time periods in the fall of 1992, and where there purportedly was no evidence of sexual abuse outside the home;

> 2) that the evidence was insufficient to establish Petitioner's guilt of the rape charged in count seventeen of his indictment, where there allegedly was no proof of sexual abuse during the relevant time period;

> 3) that the evidence was insufficient to sustain Petitioner's conviction of the rapes charged in counts thirteen through seventeen of his indictment, in light of the purported absence of proof of force;

> 4) that Petitioner's trial counsel provided ineffective assistance by failing to object to prosecutorial misconduct and improper evidence, both of which purportedly operated to unfairly bolster the credibility of Petitioner's daughter; and

> 5) that Petitioner was denied a fair trial and his right to confront his accusers through the trial court's decision to admit into evidence a chart prepared by the prosecutor.

(*See* 6/18/2003 Petition for Writ of Habeas Corpus, J.A. at 5-19.)

The matter was referred to a magistrate judge. On May 12, 2004, the magistrate judge issued a report and recommendation ("R & R") recommending that the petition be granted as to claim one, but that the remainder of the Petitioner's claims be dismissed as lacking in merit. Both Petitioner and the Respondent warden, Anthony Brigano, filed objections to the R & R. In an opinion and order dated December 9, 2004, the district court overruled the parties' objections, adopted the R & R, and granted the petition as to claim one. That same day, the court entered a final judgment vacating Petitioner's convictions of the felonious sexual penetration offenses charged in counts nine and ten of the indictment, and dismissing the remainder of Petitioner's claims.

Both Petitioner and Respondent now appeal from the district court's rulings. Respondent seeks to overturn the district court's grant of relief under claim one of the habeas petition. Petitioner, who was represented by counsel in the district court but is now proceeding *pro se,* seeks

to reverse the district court's dismissal of his remaining four claims for relief. The district court granted a certificate of appealability ("COA") limited to Petitioner's challenges to the dismissal of claims two and five of his petition, and this court subsequently denied Petitioner's request for an expanded COA encompassing claims three and four of the petition. Accordingly, only claims one, two, and five of the petition are presently before us. We now turn to these matters.

## III. *ANALYSIS*

### A.    The Standards Governing Federal Habeas Review of Challenges to a State Court Conviction

When considering a district court's decision to grant or deny a habeas corpus petition, we review findings of fact for clear error and conclusions of law *de novo*. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied,* 544 U.S. 928 (2005). Because the federal habeas petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), its provisions govern here. *See Hicks*, 377 F.3d at 551.

Where, as here, the claims raised in a federal habeas petition have been addressed on the merits by the state court, relief cannot be granted unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As to the first part of this standard, the Supreme Court recently explained:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton,* 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005) (citations omitted). With these standards in mind, we turn first to Respondent's appeal of the district court's grant of relief to Petitioner on claim one of his habeas petition.

### B.    The Ohio Court of Appeals Did Not Render a Decision Contrary to Clearly Established Federal Law in Upholding Petitioner's Convictions Under Counts Nine and Ten of the Indictment Despite a Variance Between the Bill of Particulars and the Evidence at Trial.

Although the district court found that four of the five claims in Petitioner's habeas petition were lacking in merit, it granted him relief on claim one, in which Petitioner challenged the sufficiency of the evidence to sustain his conviction of the felonious sexual penetration offenses charged in counts nine and ten of the indictment. In particular, Petitioner argued, and the district court agreed, that a bill of particulars supplied by the State operated to limit the location of these offenses to the family home shared by Petitioner and the alleged victim, his daughter Jodi. Because Petitioner was separated from his wife during the time period in the fall of 1992 when these two offenses allegedly were committed, and because there was no evidence at trial that he lived at or visited the family home during this period, the district court held that the evidence was insufficient to establish Petitioner's guilt of these offenses. Respondent now challenges this ruling, contending that it rests upon a misapprehension of the legal significance of the discrepancy between the allegations set forth in the bill of particulars and the evidence introduced at trial. We agree.

As an initial matter, it is clear that neither the indictment nor the underlying Ohio statute that Petitioner was charged with violating places any relevant restriction upon the location where the charged offenses of felonious sexual penetration must have occurred. Count nine of the indictment charges that "between the dates of September 1, 1992, and October 1, 1992," and within "the County of Logan," Petitioner "without privilege to do so and purposely by force or threat of force, did insert any part of the body into the vaginal cavity of another who is not the spouse of the offender when the other person is less than 13 years of age, . . . in violation of Ohio Revised Code Section 2907.12(A)(1)(b)." (Indictment at 2, J.A. at 46.) Count ten reads essentially the same, except that the offense charged in that count allegedly occurred "between the dates of October 1, 1992, and November 1, 1992." (*Id.* at 3, J.A. at 47.) Apart from the limitation to Logan County —a limitation that Petitioner does not challenge — these two counts do not specify that the charged offenses occurred at any particular locations.

Similarly, the Ohio statute cited in these counts does not dictate that the offense of felonious sexual penetration must occur at any particular location. At the time that Petitioner allegedly committed the offenses charged in counts nine and ten, this statute provided in pertinent part:

> (A)(1) No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> \* \* \* \*
>
> (b)   The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> \* \* \* \*
>
> (B)  Whoever violates this section is guilty of felonious sexual penetration, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.

Ohio Rev. Code Ann. § 2907.12 (West 1995).[2] Plainly, nothing in this statute indicates that location is an element of the offense of felonious sexual penetration.

Just as clearly, however, the bill of particulars supplied by the State of Ohio in this case ***does*** specify a location at which the offenses charged in the indictment allegedly occurred. The bill of particulars states, in pertinent part:

> The facts in these Counts started when the Defendant's daughter, Jodi Geboy, was approximately eight years of age. Jodi was born on 6/25/80. The Defendant began touching Jodi on her erogenous zones against her will. This activity started and continued between the dates of September 1, 1988, and October 1, 1991.[3]
>
> \*\*\*\*

---

[2] This statute was repealed effective September 3, 1996, and the offense of felonious sexual penetration was merged into the offense of rape, codified at Ohio Rev. Code Ann. § 2907.02.

[3] The end date of this time period was later amended to June 30, 1999.

Counts 9 through 12 involve the Defendant having sexual conduct with his daughter. This Defendant abused the victim on a regular and on-going basis. The sexual conduct involves digital penetration, wherein the Defendant inserted his fingers into the vaginal cavity of his child.

\*\*\*\*

The State's evidence will establish that the victim was forced to engage in all of the activities that the Defendant is indicted for. The difference in size and age between the two constitutes the physical force used in these crimes. Psychological force was used by the Defendant. The relationship between the perpetrator and victim in this case is that of parent and child. The child's will was overcome by fear, duress and intimidation that was exercised upon her by the Defendant. The Defendant threatened the victim using a number of tactics throughout the course of the on-going abuse.

> ***The crimes were committed in Logan County, Ohio, at the home of the Defendant and victim.***

(Petitioner's 8/18/2005 Traverse, Ex. 1, 5/9/2000 Bill of Particulars at 1-2 (emphasis added).)[4]

If the last sentence of the bill of particulars is construed as referring exclusively to the family home at 1169 County Road 200 in Bellefontaine, Ohio, where Petitioner's daughter Jodi spent her childhood years, and where Petitioner also resided for most of the relevant period from 1988 to 1999, then it cannot be said that the evidence at trial established that the offenses charged in counts nine and ten of the indictment were committed at this location. The testimony of the victim herself, Petitioner's daughter Jodi, is the principal source of evidence on this point. In her testimony at trial, Jodi described Petitioner's escalating acts of sexual abuse throughout her childhood years, beginning with incidents during Jodi's grade-school years, when she was between the ages of eight and eleven years old, in which Petitioner would expose himself to her, make her touch his penis, and feel her breasts, and concluding in her teenage years when Petitioner made her perform oral sex on him and engage in sexual intercourse with him. (*See* 3/14/2002 Trial Tr. at 492-97.)[5] With regard to the specific time period referenced in counts nine and ten of the indictment, when Jodi was twelve years old and in middle school, she testified that Petitioner would "put[] his fingers down in [my] vaginal area inside and on the outside, and he would rub himself on me." (*Id.* at 496.)

When asked at trial how frequently this sort of conduct occurred through the course of the eleven-year (1988-99) time period referenced in the indictment, Jodi testified that "[m]ost of the time something happened every day," and that "there was something that happened every day." (*Id.* at 515.) Defense counsel then returned to this subject on cross-examination:

Q:      . . . . I heard you say on direct examination that was happening every day after school. Do you recall that testimony?

A:      Yes.

---

[4] Unfortunately, the bill of particulars was not included in the joint appendix provided to this court. Nonetheless, we have obtained a copy from the district court record.

[5] Once again, most of the relevant pages of the trial transcript were not included in the joint appendix, but instead have been obtained from the district court record.

Q:    And are you saying that it was happening every day after school from your second grade all the way through high school?

A:    Yes.

Q:    Every day after school.

A:    Not — I mean every day something happened. I don't — I mean, I'm sure there's days here and there that went by and nothing did, but for the most part, yes.

(*Id.* at 569.)

Following Jodi's testimony on direct examination regarding the various sorts of sexual abuse in which Petitioner had engaged over the years, she then was asked *where* these incidents had occurred:

Q:    Okay. The acts that you're describing, where did most — most of this take place at?

A:    In our house.

Q:    Is that the same house that you previously testified about?

A:    Yes.

Q:    Did these acts ever occur anywhere else other than inside the family home?

A:    Yes.

Q:    Where else?

A:    In the car if we were on the way to the grocery store. Outside, like behind the barn. On vacations sometimes.

Q:    And in what county did these acts occur?

A:    Mostly Logan County.

(*Id.* at 507-08.) Plainly, this testimony exceeds the narrow limitation in the bill of particulars to acts committed "at the home of the Defendant and victim."

In addition to Jodi's testimony concerning the types and frequency of Petitioner's sexual abuse and the locations where these acts were committed, the trial record also includes evidence of Petitioner's whereabouts during the time period in the fall of 1992 when he allegedly committed the offenses charged in counts nine and ten of the indictment. Petitioner's then-wife (and Jodi's mother), Janice Geboy, testified that she and Petitioner were separated in 1992, that Petitioner lived in an apartment during this period, and that this separation lasted almost a year. (*See* 3/13/2002 Trial Tr. at 403-04.) Janice Geboy further testified that she saw Petitioner during this period "[w]hen [she] took the kids over" to his apartment, as well as on other occasions when she and Petitioner met at his apartment to talk about getting back together. (*See id.* at 451.) Finally, Petitioner introduced the testimony of his landlord at the time, Ralph Ruggles, who stated that Petitioner's apartment rental spanned from September of 1992 until December of 1993. (*See* 3/14/2002 Trial Tr. at 649-50.)

Against this evidentiary backdrop, Petitioner argued before the Ohio Court of Appeals, and again in support of claim one of his federal habeas petition, that the record at trial was insufficient to sustain his conviction of the offenses charged in counts nine and ten of the indictment. In particular, Petitioner contended that the jury could not permissibly have found that he committed these offenses at the family home, as arguably alleged in the bill of particulars, where the record established that he did not live at the family home when these offenses were committed in the fall of 1992. Petitioner further asserted that there was no evidence of any act of sexual abuse occurring at the apartment where he resided at the time.

In rejecting this challenge, the Ohio Court of Appeals reasoned as follows:

> [Jodi Geboy] testified that from 1988 to 1999 she was continuously molested by her father. She described in detail how the abuse began as mere genitalia exposure in grade school and then escalated to sexual intercourse by the time she was in high school. When asked how often the abuse occurred over an eleven-year time span she responded as follows:
>
>> "Most of the time something happened every day, whether it was while I was sitting and doing my homework and he'd come by and grab me or something. I mean, there was something that happened every day."
>
> [Jodi] would have been twelve-years old and in junior high during the time frame alleged in counts nine and ten of the indictment. When asked about the periods in which her parents separated, [Jodi] testified to remembering separations, but could not recall dates. Thereafter, when asked if anything changed as far as type of abuse that was occurring, [Jodi] stated that the abuse became more serious as she got older and that by junior high he was penetrating her vagina with his fingers and mouth. Later, when asked if the abuse ever occurred outside of the family home, the victim responded affirmatively and testified to being abused "in the car if we were on the way to the grocery store. Outside, like behind the barn. On vacations sometimes."
>
> Additionally, [Jodi's] mother testified that during the periods in which she was separated from [Petitioner], she would drop [Jodi] off at his apartment for visits and that [Petitioner] would occasionally visit the family home. Viewing this evidence in a light most favorable to the prosecution, we find sufficient evidence such that any rational trier of fact could have found that [Petitioner] committed felonious sexual penetration with his daughter during the time he was separated from his wife.
>
> [Petitioner] next argues that even if sufficient evidence existed with regards to counts nine and ten, the prosecution was confined to proving abuse in the family home as stated in the bill of particulars. Contrary to what [Petitioner] argues, "the purpose for giving a bill of particulars is 'to elucidate or particularize the conduct of the accused,' but not 'to provide the accused with specifications of evidence or to serve as a substitute for discovery.'" *State v. Avery* (1998), 126 Ohio App.3d 36, 709 N.E.2d 875, quoting *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 239, 551 N.E.2d 1261, 1262. Furthermore, "a certain degree of inexactitude in averments is not necessarily fatal to a prosecution in cases dealing with sex offenses against victims of tender years." *State v. Lawrinson* (1990), 49 Ohio St.3d at 239, 551 N.E.2d 1261.

Even if we were to find that the bill of particulars was not as specific with respect to locations as it should have been, the [Petitioner] fails to show prejudice. Both the indictment and the bill of particulars give specific dates such that at all times [Petitioner] had the ability to defend himself from the allegations of abuse. [Petitioner] was aware that he lived outside the family home during the periods articulated in counts nine and ten and could have requested a more specific bill of particulars with respect to locations. [Petitioner] had the opportunity to cross-examine [Jodi] regarding the specific locations of her alleged abuse. Furthermore, during closing arguments, [Petitioner's] trial counsel pointed out to the jury that the [Petitioner] lived in an apartment and that the victim never specifically identified the apartment as a location of abuse. Clearly, [Petitioner] was not harmed by any inconsistencies in the bill of particulars or the indictment.

*State v. Geboy*, *supra,* 2003 WL 178616, at \*3.

In granting relief on claim one of Petitioner's federal habeas petition, the district court found that the decision of the Ohio Court of Appeals ran afoul of both parts of the two-part AEDPA standard for federal habeas review of state court rulings. First, the district court held that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), where the district court was unable to identify any support in the trial record for the Ohio appellate court's determination that Petitioner occasionally visited the family home during the two-month period cited in counts nine and ten of the indictment. Next, the district court found that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), to the extent that the state court found that Petitioner was not harmed by the inconsistencies between the allegations in the bill of particulars and the evidence at trial. In the district court's view, these inconsistencies prejudiced Petitioner in his effort to "defend[] himself by arguing that the acts alleged [in counts nine and ten of the indictment] never took place, and could not have taken place, since he was not residing in the family home during the time periods at issue." (District Court 12/9/2004 Op. at 4, J.A. at 694.)

We readily agree that the Ohio appellate court erred in citing the purported testimony of Janice Geboy that Petitioner occasionally visited the family home during the time that he and his wife were separated. Like the district court, we have been unable to identify any such testimony in the record, nor any other evidence that Petitioner was present at the family home at any time during this period. As stated earlier, if the bill of particulars is construed as alleging that all of Petitioner's crimes, including those charged in counts nine and ten, were committed in the family home, then it may fairly be said that the evidentiary record fails to support this allegation as to the felonious sexual penetration offenses charged in counts nine and ten.[6]

We part company with the district court, however, as to the legal significance of this evidentiary disparity. In his habeas petition and other submissions in the court below, Petitioner characterized his challenges to his felonious sexual penetration convictions as resting upon the insufficiency of the evidence to prove these offenses. In assessing such a challenge, a reviewing court must ask "whether, after viewing the evidence in the light most favorable to the prosecution,

---

[6] In the court below, Respondent argued that the reference in the bill of particulars to "the home of the Defendant and victim" could be construed as encompassing *two* residences — namely, the family home *and* the apartment where Petitioner lived for part of the relevant 1988-99 period referenced in the indictment. It is unclear how much Respondent gains from this broader construction, however, where Jodi did not identify her father's apartment as a place where sexual abuse occurred. In any event, Respondent is no longer advancing this argument on appeal, and our disposition of this matter on other grounds makes it unnecessary for us to decide whether this is a plausible reading of the bill of particulars.

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). In a habeas action, we apply this *Jackson* standard "through the framework of [28 U.S.C.] § 2254(d)." *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir.), *cert. denied,* 537 U.S. 1004 (2002). Further, this standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16.

Because the focus of a sufficiency challenge is on the "essential elements of the crime," *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789, it would appear unlikely that a discrepancy between a **bill of particulars** and the evidence at trial could sustain such a challenge. Under Ohio law — which, as noted, determines the elements of the offenses charged in this case — the State cannot permissibly amend an indictment, whether directly or through a bill of particulars, if the result would be that the offenses charged in the original and amended indictments are different crimes that require proof of different elements. *See* Ohio Crim. R. 7(D); *see also State v. Vitale,* 645 N.E.2d 1277, 1280-81 (Ohio Ct. App. 1994); *State v. Barnecut,* 542 N.E.2d 353, 356 (Ohio Ct. App. 1988). By the same token, the State generally **may** amend an indictment or bill of particulars, even after trial for the purpose of conforming to the evidence, so long as "no change is made in the name or identity of the crime charged." Ohio Crim. R. 7(D); *see also State v. Daniel,* 647 N.E.2d 174, 180 (Ohio Ct. App. 1994); *State v. Madden,* 472 N.E.2d 1126, 1128-29 (Ohio Ct. App. 1984). From these principles, it readily follows that the sorts of details supplied in a bill of particulars typically do not qualify as elements of the offenses charged in an underlying indictment. *See, e.g., State v. Sellards,* 478 N.E.2d 781, 783-84 (Ohio 1985) (distinguishing between an indictment, in which the State "aver[s] all material facts constituting the essential elements of an offense," and a bill of particulars, which serves to "elucidate or particularize the conduct of the accused alleged to constitute the charged offense").

As an example, the Ohio courts have concluded in a number of cases that precise dates and times were not elements of the charged offenses, and thus need not have been set forth in the indictment. *See, e.g., State v. Lawrinson,* 551 N.E.2d 1261, 1262 (Ohio 1990); *State v. Grewell,* 543 N.E.2d 93, 98-99 (Ohio 1989); *Sellards,* 478 N.E.2d at 785; *Daniel,* 647 N.E.2d at 557. Rather, such information must be provided only upon a defendant's request for a bill of particulars — and, even then, only if "the state possesses the specific information requested by the accused" and this information "is material to the defendant's ability to prepare and present a defense." *Lawrinson,* 551 N.E.2d at 1262. If, as happened here, the State provides more detailed allegations in a bill of particulars that differ from the evidence at trial, this discrepancy does not elevate these additional details into "elements" that must have been included in the indictment. *See State v. Webb,* 596 N.E.2d 489, 491 (Ohio Ct. App. 1991). Instead, the discrepancy is properly characterized as a mere variance, and the relevant question is whether the defendant was prejudiced by this variance. *See Grewell,* 543 N.E.2d at 99 & n.9; *Daniel,* 647 N.E.2d at 180-81; *Webb,* 596 N.E.2d at 490-91.[7]

---

[7] Federal law recognizes a similar distinction. As we have explained:

> The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury. The constitutional rights of an accused are violated when a modification at trial acts to broaden the charge contained in an indictment. A *variance* to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. In contrast, an *amendment* involves a change, whether literal or in effect, in the terms of the indictment. This Circuit has held that a variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment . . . .
>
> While the distinction between a variance and a constructive amendment is sketchy, the

Applying these principles of Ohio law to the present case, we conclude that the specific reference in the bill of particulars to "the home of the Defendant and victim" did not operate to elevate this location to an element of the various offenses charged in the indictment. As noted earlier, nothing in the indictment or the underlying statute that defines the crime of felonious sexual penetration indicates that location is an element of this offense. Rather, the statute is silent as to location, and the indictment alleges only that Petitioner committed his offenses in Logan County. Petitioner has not suggested that the indictment was deficient under Ohio law for lack of a more specific location where these offenses allegedly were committed. Consequently, because location was ***not*** an element of the offenses charged in counts nine and ten of the indictment, Petitioner's sufficiency challenge need not be evaluated by reference to whether the State proved the allegation in the bill of particulars that these offenses were committed "at the home of the Defendant and victim." It matters only whether a "rational trier of fact could have found the ***essential elements*** of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789 (emphasis added).

Viewing Petitioner's sufficiency challenge in this light, we perceive no defect in the Ohio court's resolution of this issue that would warrant federal habeas relief. To be sure, and as the district court correctly observed, there was no evidence at trial that Petitioner lived at or visited the family home during the time periods in which he allegedly committed the offenses charged in counts nine and ten of the indictment. Nonetheless, the Ohio Court of Appeals pointed to the testimony of Petitioner's daughter, Jodi, that her father's acts of sexual abuse were not strictly confined to the family home, but also occurred at other locations. The state court further noted Jodi's testimony that Petitioner sexually abused her nearly every day over an eleven-year period, a time span that encompassed the two one-month periods specified in counts nine and ten. As explained, any gaps in this testimony, or in the record generally, as to precisely ***where*** this misconduct occurred is irrelevant to Petitioner's sufficiency challenge, because nothing in Ohio law holds that location is an element of the offense of felonious sexual penetration. Accordingly, we find that the Ohio court's rejection of Petitioner's sufficiency challenge was wholly consistent with, and not at all contrary to, the clearly established federal law governing this subject.

This leaves only the question whether Petitioner was prejudiced by the variance between the allegation in the bill of particulars and the evidence at trial regarding the precise location of Petitioner's offenses.[8] As the Supreme Court has explained, such a variance in proof warrants the reversal of a conviction only if it "affect[s] the substantial rights of the accused." *Berger v. United States,* 295 U.S. 78, 82, 55 S. Ct. 629, 630 (1935) (internal quotation marks omitted); *see also Chilingirian,* 280 F.3d at 712; *United States v. Zelinka,* 862 F.2d 92, 97 (6th Cir. 1988). A

---

consequences of each are significantly different. A variance will not constitute reversible error unless substantial rights of the defendant have been affected. A constructive amendment, on the other hand, is a variance that is accorded the per se prejudicial treatment of an amendment, because, like an actual amendment, it infringes upon the Fifth Amendment's grand jury guarantee. Consequently, a constructive amendment warrants reversal of a conviction.

*United States v. Chilingirian,* 280 F.3d 704, 711-12 (6th Cir. 2002) (internal quotation marks, citations, and alterations omitted).

[8] Notably, in his submissions in the court below, Petitioner disavowed any such claim of an impermissible variance between the bill of particulars and the evidence at trial, and instead insisted that he was pursuing only a sufficiency challenge. (*See, e.g.,* Petitioner's 8/18/2005 Traverse at 10.) The district court, likewise, opined that Respondent had "mischaracterize[d]" Petitioner's claim as resting upon adequacy of notice rather than sufficiency of the evidence. (District Court 12/9/2004 Op. at 2-3.) Nonetheless, the district court recognized, albeit only implicitly, that the variance between the bill of particulars and the evidence at trial implicated issues beyond sufficiency of the evidence, as it proceeded to inquire whether Petitioner had been prejudiced by this variance. (*See id.* at 4.) As we observed earlier, a showing of prejudice is essential to a claim of an impermissible variance, but is immaterial to a sufficiency challenge.

defendant's substantial rights are affected where he is "prejudicially surprised" by the variance, or where it otherwise "prejudice[s] the fairness of [the defendant's] trial." *United States v. Miller,* 471 U.S. 130, 134-35, 105 S. Ct. 1811, 1814 (1985); *see also United States v. Ragen,* 314 U.S. 513, 526, 62 S. Ct. 374, 380 (1942); *Berger,* 295 U.S. at 82, 55 S. Ct. at 630; *Zelinka,* 862 F.2d at 97.

The Ohio Court of Appeals found no such prejudice, but the district court concluded otherwise. For its part, the state court found that, because the indictment identified specific ranges of dates within which Petitioner allegedly committed the offenses charged in counts nine and ten, this afforded him sufficient notice and opportunity to develop evidence and arguments as to any discrepancies between the locations of the alleged abuse and his whereabouts during these periods. *See Geboy,* 2003 WL 178616, at *3. The state court further observed that Petitioner had availed himself of this opportunity by cross-examining his daughter Jodi "regarding the specific locations of her alleged abuse," and then pointing out during closing argument that he had lived in an apartment during the relevant periods and that "the victim never specifically identified the apartment as a location of abuse." *Id.* The district court, in contrast, found that Petitioner had been prejudiced by the variance between the bill of particulars and the evidence at trial, reasoning that he had "defended himself by arguing that the acts alleged never took place, and could not have taken place, since he was not residing in the family home during the time periods at issue." (District Court 12/9/2004 Op. at 4, J.A. at 694.)

While the reference to a specific location in the bill of particulars surely ***could have*** led Petitioner to adopt the defense that he never visited this location during the periods encompassed by counts nine and ten of the indictment, we find no basis under the governing AEDPA standards to disturb the state court's determination that Petitioner ***did not***, in fact, pursue such a defense at trial. Petitioner's principal defense was, quite simply, that the abuse described by his daughter did not happen. As stated by his counsel near the outset of closing argument, "the issue gets to be, Jodi said he did it, [Petitioner] said I didn't." (3/15/2002 Trial Tr. at 781.) Counsel later described Petitioner's "frustrat[ion] . . . in this particular situation because he says I didn't do it, how do I prove that I didn't do it?" (*Id.* at 785.) Finally, near the conclusion of his closing argument, Petitioner's counsel opined that "[t]he issue is can you believe what Jodi had to say?" (*Id.* at 804.)

While Petitioner and his counsel did advance an argument based on the evidence of Petitioner's whereabouts during the time frame of the offenses charged in counts nine and ten, this argument actually belies, rather than supports, the notion that Petitioner was somehow misled or prejudiced by the variance between the bill of particulars and the proof at trial. As noted, Petitioner adduced evidence, including the testimony of his landlord, that he lived at an apartment rather than the family home during this period, and nothing in the record indicates that he even visited the family home during the time that he was separated from his wife. Yet, Petitioner did ***not*** point to this evidence as proof that he could not have committed the offenses charged in counts nine and ten "at the home of the Defendant and victim," as alleged in the bill of particulars. Instead, his counsel cited the absence of any testimony or other evidence "that anything happened at [Petitioner's] apartment." (*Id.* at 785.) Petitioner's counsel then explained the significance of this evidentiary gap:

> I told you about [Petitioner's landlord]. His testimony was relevant as far as counts nine, ten, 11 and 12 when Jodi says through the indictment that there was felonious sexual penetration going on, where you heard her say that it happened at the house and it happens in the car. Never heard at the apartment.
>
> And when these counts are filed — with these counts, dates of these counts are of a period of time when [Petitioner] was living at an apartment, not at home. The fact that that is — I could prove to you that that's a lie, the fact that they — that we have this lie here, helps prove that the rest of this is a lie.

(*Id.* at 801-02.)

If Petitioner truly had been misled by the allegation in the bill of particulars that his alleged abuse of his daughter occurred solely "at the home of the Defendant and victim," there would have been no reason for Petitioner and his counsel to point to the absence of evidence of abuse at *other* locations, such as his apartment. Rather, it would have been enough simply to explain to the jury that Petitioner could not possibly be guilty of the offenses charged in counts nine and ten, where no evidence placed him at the specified location of these offenses during the time period encompassed by these two counts. By emphasizing the absence of evidence of abuse at Petitioner's apartment, Petitioner and his counsel plainly elected to pursue a different line of defense — namely, that the victim's testimony was not credible because she failed to identify Petitioner's apartment, where he lived during the time span encompassed by counts nine through twelve of the indictment, as a location where any abuse occurred. The variance between the bill of particulars and the evidence at trial did nothing to undermine or otherwise prejudice this attack upon the credibility of Petitioner's daughter.

Under this record, we cannot say that the decision of the Ohio Court of Appeals was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Nor can we conclude that the state court's finding of no prejudice reflected an "unreasonable application" of the federal law governing variances of proof. 28 U.S.C. § 2254(d)(1). Accordingly, we reverse the district court's grant of relief to Petitioner under claim one of his habeas petition.

## C.     Petitioner Has Failed to Advance Any Arguments in Support of the Issues Properly Raised in His Cross-Appeal.

Having addressed the issue raised in Respondent's appeal, we now turn to Petitioner's cross-appeal. As a threshold matter, Respondent contends in his brief on appeal that we should dismiss Petitioner's cross-appeal for failure to file a brief by the court-ordered due date of October 24, 2005. Petitioner instead filed his appellate brief on December 20, 2005, nearly two months after the deadline, without in any way acknowledging or explaining this untimely submission. This course of conduct runs afoul of Sixth Circuit Rule 26, which states that "[t]his Court does not favor applications for extensions of time for the filing of briefs," Sixth Circuit Rule 26(b), and which further provides:

> Any late documents for which there is a submission deadline and which are tendered after that deadline has passed, shall be accompanied by a motion for leave to file out-of-time and a memorandum explaining the circumstances. Absent the grant of such a motion, the documents will not be acted on.

Sixth Circuit Rule 26(c); *see also Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996) (observing that the "lenient treatment generally accorded to pro se litigants has limits," and ordinarily does not extend to a "fail[ure] to comply with an easily understood court-imposed deadline"). Because Petitioner did not request, much less obtain, leave of this court to file his appellate brief after the October 24, 2005 due date, our rules seemingly preclude us from considering his untimely submission.

We find it unnecessary to decide this question, however, because Petitioner's brief on appeal utterly fails to address either of the claims for which he has obtained a certificate of appealability ("COA"). As noted earlier, the COA granted by the district court was limited to Petitioner's challenges to the dismissal of claims two and five of his petition, and this Court subsequently denied Petitioner's request for an expanded COA encompassing claims three and four of the petition. Thus, only two issues are properly before us on Petitioner's cross-appeal: (i) whether the evidence was

sufficient to establish Petitioner's guilt of the rape charged in count seventeen of his indictment, and (ii) whether Petitioner was denied a fair trial and his right to confront his accusers through the state trial court's decision to admit into evidence a chart prepared by the prosecutor.

Petitioner's untimely brief on appeal notably fails to advance ***any*** arguments bearing upon these issues. Rather, his entire brief is devoted to challenging the admissibility of the testimony of one of the State's witnesses, Andrew Stoner. This issue, however, is relevant only to claim four of Petitioner's habeas petition, and no COA has been granted as to this claim. As to the claims that are properly before us, Petitioner has not suggested any defects in the district court's dismissal of these claims, much less advanced any sort of argument for the reversal of the district court's rulings on these matters. We decline to identify and address the arguments that Petitioner could have made but did not, and instead find that he has waived any possible challenge to the dismissal of claims two and five of his habeas petition. *See Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citations omitted)); *see also Coleman v. Shoney's, Inc.,* No. 02-5991, 79 F. App'x 155, 156-57 (6th Cir. Oct. 24, 2003) (confirming that this principle applies to *pro se* litigants).[9]

## IV. *CONCLUSION*

For the reasons set forth above, we REVERSE the district court's grant of relief to Petitioner Alan Geboy on claim one of his habeas petition, AFFIRM the denial of relief as to claims two and five of this petition, and REMAND with instructions to dismiss the petition in its entirety.

---

[9] In any event, we have reviewed the district court's rulings as to claims two and five of the habeas petition, as well as the corresponding arguments advanced by Petitioner's counsel in the court below, and we are satisfied that the district court did not err in its disposition of these claims.